# SLOAN v. UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

*No. 453.   Argued March 16, 17, 1904.—Decided April 4, 1904.*

Where a suit does not really and substantially involve a dispute or controversy as to effect or construction of the Constitution and laws of the United States upon the determination whereof the result depends, it is not a suit under such Constitution and laws within the meaning of the fifth section of the act of March 3, 1891, 26 Stat. 827, and the jurisdiction of this court cannot be maintained of a direct appeal from the Circuit. Court.

Actions brought against the United States in the Circuit Court under the act of August 7, 1882, 22 Stat. 342, for allotments of land in which both the complainants and the United States rely upon the construction of the act of 1882, and the construction of various treaties between the United States and Indian tribes is not substantially or in any other than a merely incidental or remote manner drawn in question, do not involve the construction of such treaties within the meaning of section 5 of the act of 1891, and direct appeals to this court will be dismissed.

THE facts are stated in the opinion of the court.

*Mr. Thomas L. Sloan,* with whom *Mr. Charles E. Clapp* and *Mr. H. C. Brown* were on the brief, for appellants.

*Mr. John L. Webster,* with whom *Mr. Solicitor General Hoyt* and *Mr. W. S. Summers* were on the brief, for appellee.

MR. JUSTICE PECKHAM delivered the opinion of the court.

These are appeals by the complainants below directly to this court from the Circuit Court of the United States for the District of Nebraska. They were taken under the provisions of the fifth section of the act of March 3, 1891, 1 U. S. Comp. Stat. 549; 26 Stat. 827, on the ground that the construction of a treaty or treaties of the United States with the Omaha

Indians is drawn in question. The actions were brought some time in April, 1901, under the authority of the acts of Con-gress approved respectively August 15, 1894, and February 6, 1901, permitting persons, in whole or in part of Indian blood and claiming to be entitled to an allotment of land under any act of Congress, to commence an action in the proper Circuit Court of the United States for the purpose of maintaining their right to such allotment. 28 Stat. 286, 305; amended, 31 Stat. 760.

Under the authority of these statutes the complainants have brought these actions to obtain allotments in the reservation of the Omaha Indians. Their right thereto is based upon the act of Congress, chapter 434, approved August 7, 1882, 22 Stat. 341, the fifth section of which is set forth in the margin.[1]

---

[1] ACT OF 1882.

SEC. 5. That with the consent of said Indians as aforesaid the Secretary of the Interior be, and he is hereby, authorized, either through the agent of said tribe or such other person as he may designate, to allot the lands lying east of the right of way granted to the Sioux City and Nebraska Railroad Company, under the agreement of April nineteenth, eighteen hundred and eighty, approved by the Acting Secretary of the Interior July twenty-seventh, eighteen hundred and eighty, in severalty to the Indians of said tribes in quantity as follows: To each head of a family, one-quarter of a section; to each single person over eighteen years of age, one-eighth of a section; to each orphan child under eighteen years of age, one-eighth of a section; and to each other person under eighteen years of age, one-sixteenth of a section; which allotments shall be deemed and held to be in lieu of the allotments or assignments provided for in the fourth article of the treaty with the Omahas, concluded March sixth, eighteen hundred and sixty-five, and for which, for the most part, certificates in the names of individual Indians to whom tracts have been assigned, have been issued by the Commissioner of Indian Affairs, as in said article provided: Provided, That any Indian to whom a tract of land has been assigned and certificate issued, or who was entitled to receive the same, under the provisions of said fourth article, and who has made valuable improvements thereon, and any Indian who being entitled to an assignment and certificate under said article, has settled and made valuable improvements upon a tract assigned to any Indian who has never occupied or improved such tract, shall have a prefer-ence right to select the tract upon which his improvements are situated, for allotment under the provisions of this section: Provided further, That all allotments made under the provisions of this section shall be selected by the

By the act approved March 3, 1893, chapter 209, 27 Stat.
pp. 612, 630, the act was amended so as to .enlarge somewhat
the right to allotments with the consent of the Indians, but the
material portion of the act is the original section 5, above
quoted.

All of the complainants are of mixed blood, and in their
various bills of complaint they insist that they are entitled to
allotments under and by virtue of the correct construction of
the above act of 1882 and its amendments, and they set up
the facts upon which they base their contentions, which in-
cluded references to the treaties above mentioned. After
having stated them, the complainants aver that the defend-
ant, the United States, had theretofore contended that the
fourth article of the treaty of March 6, 1865, between the
United States and the Indians, confined the right of allotment
to the members of the tribe, including their half-breed and
mixed blood relatives who were residing with them at the
time of the ratification of the treaty, and that neither the
complainants nor their ancestors were residing on the reserva-
tion at the time, and were therefore not entitled to the land.

Complainants further stated that the United States had also
contended that some of the complainants or their ancestors
had received allotments of land under and by virtue of the
treaty of July 15, 1830, article 10 thereof, and that by the
acceptance of such allotments the complainants were not en-
titled under the statute of 1882 to a second allotment or further
participation in the tribal rights of the Omaha tribe of Indians.
To these matters of defence the complainants then set up
certain facts which they insisted were answers thereto, and
that the complainants were therefore entitled under the stat-
ute to the allotments claimed by them.

The United States in its answer did make reference to certain

---

Indians, heads of families selecting for their minor children, and the agent
shall select for each orphan child; after which the certificates issued by the
Commissioner of Indian Affairs as aforesaid shall be deemed and held to be
null and void.

treaties it had made with the Omaha Indians. The reference was for the purpose of founding an argument for the construction of the act of 1882, in the manner contended for by it. It urged that the complainants were not entitled to allotments because, among other reasons, they did not reside with the Omaha Indians on their reservation at the time of the ratification of the treaty of 1865; and also that those who had received, or whose ancestors had received, allotments under the treaty of 1830 were not entitled to any further allotment under the act of 1882. The treaties referred to in the answer are the treaty of 1830, 7 Stat. 328, 330, art. 10, and the treaty of 1865, 14 Stat. 667, art. 4. The tenth article of the treaty of 1830 is set forth in the margin.[1]

So much of article 4 of the treaty of 1865 as is material upon the question now under consideration is also set forth in the margin.[2]

---

[1] TREATY OF 1830.

ARTICLE X. The Omahas, Ioways and Ottoes, for themselves, and in behalf of the Yanckton and Santie bands of Sioux, having earnestly requested that they might be permitted to make some provision for their half-breeds, and particularly that they might bestow upon them the tract of country within the following limits, to wit: Beginning at the mouth of the Little Ne-mohaw River, and running up the main channel of said river to a point which will be ten miles from its mouth in a direct line; from thence in a direct line to strike the Grand Ne-mohaw ten miles above its mouth, in a direct line (the distance between the two Ne-mohaws being about twenty miles); thence down said river to its mouth; thence up, and with the meanders of the Missouri River to the point of beginning, it is agreed that the half-breeds of said tribes and bands may be suffered to occupy said tract of land; holding it in the same manner and by the same title that other Indian titles are held: but the President of the United States may hereafter assign to any of the said half-breeds, to be held by him or them in fee simple, any portion of said tract not exceeding a section, of six hundred and forty acres to each individual. And this provision shall extend to the cession made by the Sioux in the preceding article.

[2] TREATY OF 1865.

ARTICLE IV. The Omaha Indians being desirous of promoting settled habits of industry and enterprise amongst themselves by abolishing the tenure in common by which they now hold their lands, and by assigning

It will be observed that this article of the treaty of 1865 provides for assigning the lands therein mentioned, in severalty, to the members of the tribe, including their half or mixed blood relatives, *now residing with them.* That is, at the date of the treaty.

There is another treaty, that of 1854, between the United States and the Omaha Indians, which it is not necessary to refer to at length. In it the Indians cede to the United States certain lands therein described, and they reserve certain other lands to themselves. The sixth article permits the President to assign at his discretion the whole or such portion of the lands reserved to the Indians as he may think proper, to be surveyed into lots, and to be assigned by the President to such Indians as were willing to avail themselves of the privilege and would locate on the same as a permanent home, subject to the conditions named in the article. The treaty is not material upon the question of the right to appeal directly to this court, hereinafter discussed.

Stipulations in regard to the facts in each case were entered into between the parties and testimony also was given upon the various issues between them. The trial court held that the act of 1882 took the place of all previous acts and treaties providing for allotments of land to the Omaha tribe of Indians, including the half or mixed breeds; that the fundamental question was who, under the terms of the act of 1882, were entitled to allotments; that the rights of the complainants

limited quantities thereof in severalty to the members of the tribe, including their half or mixed blood relatives now residing with them, to be cultivated and improved for their own individual use and benefit, it is hereby agreed and stipulated that the remaining portion of their present reservation shall be set apart for said purposes; and that out of the same there shall be assigned to each head of a family not exceeding one hundred and sixty acres, and to each male person, eighteen years of age and upwards, without family, not exceeding forty acres of land—to include in every case, as far as practicable, a reasonable proportion of timber; six hundred and forty acres of said lands, embracing and surrounding the present agency improvements, sh also be set apart and appropriated to the occupancy and use of the agency for said Indians. . . .

must be adjudged according to the intent of the act of 1882, and that if a person had a right within the terms of that act to an allotment, it could not be denied him simply because he could not be brought within the terms of the treaty of 1865; that the act of 1882 did not restrict the persons to whom allotments were to be made under its provisions to those who resided on the reservation in 1865, but it included all who were in fact members of the tribe, whether of mixed blood or not, residing on the reservation in the tribal relation when the act of 1882 was passed, but such right was not possessed by the mixed bloods, who were not living on the reservation as members of the tribe in 1882; that those of mixed blood who had received allotments under the treaty of 1830 were not entitled to any allotments under the provisions of the act of 1882. 118 Fed. Rep. 283; 95 Fed. Rep. 193.

The bills were dismissed on the merits in twenty-three out of the twenty-five actions brought in the court below, while the complainants in two of them recovered judgment for an allotment to each. They were Thomas L. Sloan and Garry P. Myers. Sloan was held entitled to an allotment in his own right as an Indian of mixed blood, living on the Omaha reservation at the time of the passage of the act of 1882, although his grandmother, a daughter of a full blood Indian mother, had received an allotment of three hundred and twenty acres in the Nemaha reservation in 1857, under the treaty of 1830. Myers was held entitled as an Indian of mixed blood and a resident of the Omaha reservation in 1882, the contested question being as to the amount of his allotment, whether it should be eighty or one hundred and sixty acres, and he was held entitled to the latter quantity.

The appellee has made a motion to dismiss these appeals on the ground that the court has no jurisdiction to hear them, as they do not fall within any of the provisions of section 5 of the act of March 3, 1891, and because the respective complainants neither assert nor claim any right to an allotment under or by virtue of any treaty, and the validity or construction of a

treatÿ is not drawn in question in these cases. We think the motion should be granted.

The actions do not, in our judgment, involve the construc- tion of any treaty within the meaning of section 5 of the statute of 1891. The complainants in their several bills have based their claims to an allotment upon the act of 1882 and upon the·proper construction to be given to its language, which construction, they aver, would recognize their rights to an allotment under the treaties referred to. The United States, in defending against the claims made by tke complainants, also relies entirely upon the proper construction of the act of 1882. The construction of a treaty is used only as an argument upon the issue directly in question, viz., the construction ·of the statute. The alleged right to an allotment being based upon the act of 1882, and the defence being also based upon the proper construction of that act, we cannot but regard the case as one simply resting on such act. The construction of these various treaties was not substantially or in any other than a merely incidental or remote manner drawn in question, and therefore a direct appeal to this court cannot be sustained.

We think the appeals come within the principle of *Muse* v. *Arlington Hotel Company*, 168 U. S. 430; *Western Union Telegraph Company* v.·*Ann Arbor Railway·Company*, 178 U. S. 239, and *Lampasas* v. *Bell*, 180 U. S. 276, which hold that where the suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit under the Constitution or laws, and that jurisdiction cannot under such circumstances be maintained of a direct appeal to this court from the Circuit Court.

In *Muse* v. *Arlington Hotel Company*, it was held that some right, title, privilege or immunity dependent upon a treaty must be so set up or claimed as to require the Circuit Court to pass upon the question of the validity or construction of the treaty in disposing of the right asserted. In order to come

within the act of 1891 the treaty must be directly involved, and upon its construction the rights of the parties must rest. Within these cases it cannot be said that the construction of any treaty is drawn in question herein when the rights of neither party are necessarily dependent upon such construction, but are dependent upon that which may be given the statute of 1882, and when the construction of that statute is independent of that which may be given any of the treaties mentioned, although weight may be given to the treaties in determining the question of the construction of the statute. See also *Starin* v. *New York*, 115 U. S. 248.

The motion is granted and the appeals

*Dismissed.*