# AMERICAN SUGAR REFINING COMPANY *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 3.   Argued November 11, 1908.—Decided November 30, 1908.

A direct appeal from the Circuit Court will not lie where the only real substantial point is whether or not an officer of the United States has misconstrued a statute.

The claim that the Secretary of the Treasury has exercised legislative power in promulgating, pursuant to § 251, Revised Statutes, regulations concerning the collection of duties under the tariff law does not constitute a real and substantial dispute or controversy concerning the construction or application of the Constitution upon which the result depends, and a direct appeal will not lie to this court under § 5 of the act of March 3, 1891, c. 517, 26 Stat. 826, 828.

The regulations of 1897, promulgated by the Secretary of the Treasury, in regard to polariscopic tests of sugar to determine the duty payable thereon, as provided in § 1, Schedule E, par. 209, of the Tariff Act of July 24, 1897, c. 11, 30 Stat. 168, could have been enacted in terms by Congress without violating any provision of the Constitution of the United States, and prior decisions have determined that the Secretary properly construed the statute.

THE facts are stated in the opinion.

*Mr. John G. Johnson,* with whom *Mr. Henry B. Closson* and *Mr. John E. Parsons* were on the brief, for appellant:

The appeal in this case although arising under the revenue laws is properly brought direct from the Circuit Court and brings with it not only the constitutional question involved, but all the questions arising upon the record.

If the Treasury regulations are invalid, it is because in assuming to add something to the dutiable standard prescribed by the tariff act they constitute an exercise by the executive branch of the Government of legislative power which, by the

Constitution, has been confided solely to Congress. In a case presenting this question, a direct appeal lies to this court. *Boske* v. *Comingore*, 177 U. S. 459.

Such an appeal brings up every question in the case. *Davis Co.* v. *Los Angeles*, 189 U. S. 207; *Horner* v. *United States, No. 2*, 143 U. S. 570; *Chappell* v. *United States*, 160 U. S. 499.

Where this constitutional question is presented, it is immaterial that the case arises under the revenue laws.

When the case made by the plaintiff involves a question other than those relating to the constitutionality of the act and to the application and construction of the Constitution, the Circuit Court of Appeals has jurisdiction to review the judgment of the Circuit Court, although, if the plaintiff had elected to bring it here directly, this court would have had jurisdiction to determine all the questions arising upon the record. . . . The meaning of the words "arising under the revenue laws," in the sixth section, is satisfied if they are held as embracing a case strictly arising under laws providing for internal revenues and which does not, by reason of any question in it, belong also to the class mentioned in the fifth section of the act of 1891. *Spreckles Sugar Refining Co.* v. *McClain*, 192 U. S. 397.

*Mr. James C. McReynolds* for appellee:

The direct appeal from the Circuit Court cannot be entertained unless the construction or application of the Constitution of the United States is involved. Upon that ground alone counsel for appellant attempt to support the jurisdiction. They say that if the Treasury regulations are invalid, it is because, in assuming to add something to the dutiable standard prescribed by the tariff act, they constitute an exercise by the executive branch of the Government of legislative power which by the Constitution has been confided solely to Congress.

A mere allegation that some constitutional question is involved does not suffice to give jurisdiction; the record must

show a real, substantial dispute or controversy concerning the construction or application of the Constitution upon which the result depends. *Western Union Telegraph Co.* v. *Ann Arbor R. R. Co.*, 178 U. S. 239, 243; *Lampasas* v. *Bell*, 180 U. S. 276; *American Sugar Refining Co.* v. *New Orleans*, 181 U. S. 277, 281. No such dispute or controversy exists.

The only real substantial point involved is whether or not the Secretary of the Treasury acting under § 251, Rev. Stat., properly construed the statute, and that gives this court no jurisdiction upon direct appeal. *Sloan* v. *United States*, 193 U. S. 614, 620; *Beavers* v. *Haubert*, 198 U. S. 77, 85.

It may not be doubted that Congress, without violating any constitutional provision, could have in terms directed exactly what was prescribed by the Treasury regulations. If, attempting to act under the statute, executive officers have imposed an unauthorized burden upon appellant, no constitutional rights have been violated; there has been at most a misconstruction of the law, which does not give a direct appeal. *South Carolina* v. *Seymour*, 153 U. S. 353, 358; *Linford* v. *Ellison*, 155 U. S. 503, 508; *Rawlins* v. *Georgia*, 201 U. S. 638; *Matter of Moran*, 203 U. S. 96, 104.

Manifestly, if the construction or application of the Constitution of the United States within the meaning of § 5, act of 1891, is involved in every case where one claims according to his interpretation of a statute excessive duty or tax has been demanded by executive officers, the provisions of that act making decisions of the Circuit Court of Appeals in revenue cases final are of very limited value, and this court must entertain direct appeals from the Circuit Courts in most tariff and tax controversies.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The tariff act of July 24, 1897, c. 11, 30 Stat. 151, provides (p. 168):

"Par. 209. Sugars not above number sixteen Dutch standard in color, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above seventy-five degrees, ninety-five one-hundreths of one per cent per pound, and for every additional degree shown by the polariscopic test, thirty-five one-thousandths of one cent per pound additional, and fractions of a degree in proportion; and on sugar above number sixteen Dutch standard in color, and on all sugar which has gone through a process of refining, one cent and ninety-five one-hundreths of one cent per pound; molasses testing above forty degrees and not above fifty-six degrees, three cents per gallon; testing fifty-six degrees and above, six cents per gallon; sugar drainings and sugar sweepings shall be subject to duty as molasses or sugar, as the case may be, according to polariscopic test:  . . ."

In October, 1897, the Treasury Department issued general regulations [1] (subsequently modified in particulars not material here) governing sampling and classification of sugars under the above-quoted paragraph, which, among other things, declared:

"The expression 'testing . . . degrees by the polariscope,' occurring in the act, is construed to mean the percentage of pure sucrose contained in the sugar as ascertained by polarimetric estimation."

It was further stated that changes of temperature affect the indications of a polariscope, and to determine by means of it true sucrose contents apparent readings must be corrected as shown by a table accompanying each instrument and embodying the results of careful experiments therewith; when the thermometer is above 17.5° Centigrade, the point of standardization, additions must be made; when below, corresponding subtractions.

---

[1] These regulations, as originally promulgated, will be found at length annexed to Treasury Department Synopsis of Decisions No. 18,508, and see pars. 77 et seq.

The interpretation of the statute and validity of the regulations were at once challenged by importers, who claimed that the reading of a polariscope is not affected by change in temperature; and, further, that the term "polariscopic test" in the tariff act of 1897, according to its well-settled commercial use, as well as by the language itself, requires testing only in the way theretofore observed by merchants, and forbids any correction of the result observed by the eye. These contentions were denied by the collector.

The importers appealed to the Board of General Appraisers, and in March, 1899, their protest was overruled in a considered opinion. G. A. 4386.

Under the titles *Bartram Bros.* v. *United States, Howell* v. *United States* and *The American Sugar Refining Company* v. *United States*, appeal was taken to the Circuit Court, Southern District of New York, which was decided May 4, 1903. 123 Fed. Rep. 327. That court reversed the judgment of the General Appraisers, holding that the term, "testing by the polariscope," had a well-settled commercial meaning prior to 1897, and must be interpreted according thereto. It declared, however, the preponderance of proof sustained the contention "that there is a variation in the reading of the polariscope, according to variations in temperature at the place where the sugar is tested, and that the corrections and additions provided for by the regulations merely consist in an addition of 3 per cent for each 10 degrees Centigrade of temperature above that at which the polariscope is standardized, and that in this way the actual amount of pure sucrose in each sample is more accurately determined than was the case under the old eye test."

The Circuit Court of Appeals (131 Fed. Rep. 833) reversed the Circuit Court and sustained the General Appraisers. It held Congress intended there should be a scientific determination, by means of the polariscope, of sucrose contents, and that the method prescribed by the Treasury regulations was proper in order to secure the desired result.

The rulings are correctly stated in the headnotes thus:

"In construing the provision in paragraph 209, tariff act July 24, 1897, c. 11, sec. 1, schedule E, 30 Stat. 168 (U. S. Compiled St. 1901, p. 1647), regulating duty on sugars according to the polariscopic test, *held* that the expressions therein, 'testing by the polariscope' and 'shown by the polariscopic test,' are not used with any special trade meaning that would confine them to a particular method of conducting such test, but import an intention on the part of Congress that the method adopted should be the one best calculated to make a scientific determination.  -

"Under the general power of the Secretary of the Treasury to make customs regulations not inconsistent with law, granted by section 251, Rev. Stat. (U. S. Comp. St. 1901, p. 138), it is competent for that officer to prescribe the method of 'testing by the polariscope' the sugars dutiable according to such test under paragraph 209, tariff act July 24, 1897, c. 11, sec. 1, schedule E, 30 Stat. 168 (U. S. Comp. 1901, p. 1647); and so long as he acts in good faith, and it does not appear that his regulations operate to make the polariscopic test less accurate than when Congress adopted it, the courts should not interfere with the administrative details confided to him.

"Where, for a period of years covering the operation of several tariff acts, the Secretary of the Treasury has made regulations for carrying out certain provisions in those acts, it is to be presumed that subsequent legislation by Congress was enacted with reference to such regulations."

At October term, 1904, a petition for a writ of certiorari to bring up these cases for review was presented to this court, and denied. 195 U. S. 635.

In the present cause counsel stipulated:

"It is agreed that the sugars in question were tested and classified in accordance with the Treasury regulations of October 27, 1897, and of February 17, 1899, and that the questions raised are the same as those in the cases of *Joseph E. Bartram and others* v. *The United States, Benjamin H.*

*Howell and others* v. *The United States*, and *The American Sugar Refining Company* v. *The United States*, reported in 123 Fed. Rep. 327, and in 131 Fed. Rep. 833, and it is agreed that the evidence and exhibits in those cases contained on pages 33 to 364, inclusive, and pages 373 to 734, inclusive, of the transcript of record in those cases prepared for the Supreme Court of the United States and contained in the volume filed herewith . . . are to be treated as duly taken and introduced as evidence in this cause."

By § 6 of the act of March 3, 1891, c. 517, 26 Stat. 826, 828, the judgments or decrees of the Circuit Courts of Appeals are made final in all cases arising under the revenue law, and can only be carried to the Supreme Court by certificate, or on a certiorari. In the aforementioned cases there was no certificate for instruction on any question or proposition of law, and the application for certiorari was denied. The present direct appeal to this court is a mere attempt to obtain a reconsideration of questions arising under the revenue laws and already determined by the Circuit Court of Appeals in due course. Such direct appeals, under § 5 of the act of 1891, cannot be entertained unless the construction or application of the Constitution of the United States is involved.

This is conceded, and counsel for appellant attempt to sustain the jurisdiction on the ground that the regulations assumed to add something to the dutiable standard prescribed by the tariff act, and that in doing so the Secretary exercised legislative power confided by the Constitution solely to Congress. But this does not constitute a real and substantial dispute or controversy concerning the construction or application of the Constitution upon which the result depends.

The admitted duty of the Secretary of the Treasury was to construe as best he could the paragraph relating to collection of duty upon sugars, and to promulgate regulations for carrying it into effect. Rev. Stat. § 251. This and this alone he did. The only real substantial point involved is whether or not he misconstrued the statute, and that gives this court no juris-

diction upon direct appeal. *Sloan* v. *United States*, 193 U. S. 614, 620, and cases cited; *United States ex rel. Taylor* v. *Taft, Secretary*, 203 U. S. 461.

Undoubtedly Congress, without violating any constitutional provision, could have in terms directed exactly what was prescribed by the Treasury regulations; and prior decisions have held that the statute was properly construed by the Secretary.

We concur with counsel for the Government that if the construction or application of the Constitution of the United States, within the meaning of § 5, act of 1891, is involved in every case where one claims that according to his interpretation of a statute excessive duty or tax has been demanded by executive officers, the provisions of that act making decisions of the Circuit Court of Appeals in revenue cases final are of very limited value, and this court must entertain direct appeals from the Circuit Courts in most tariff and tax controversies, which we regard as out of the question.

*Appeal dismissed.*