UNITED STATES *v.* MCGRAW WOOL CO. (No. 3463) [1]

United States Court of Customs and Patent Appeals, November 20, 1931

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham, jr.,* special attorney, of counsel), for the United States.

*Mesirov, Hamlin & Leonards,* and *Barnes, Richardson & Halstead* (*Harry S. Mesirov* and *Samuel M. Richardson* of counsel) for appellee.

[1] T. D. 45296.

[Oral argument October 16, 1931, by Mr. Lawrence and Mr. Mesirov]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Appellee imported at the port of New York, on February 9, 1931, certain wool on the skin which was classified for duty under paragraph 1102 of the Tariff Act of 1930, which, so far as relevant, is as follows:

PAR. 1102. (a) Wools, not specially provided for, * * * on the skin, 27 cents per pound of clean content. * * *

In ascertaining the dutiable weight of said wool, the collector computed the same upon the pulled basis, as provided by a regulation duly issued by the Secretary of the Treasury, as provided by paragraph 1104 of said act, which paragraph is, in part, as follows:

PAR. 1104. The Secretary of the Treasury is hereby authorized and directed to prescribe methods and regulations for carrying out the provisions of this schedule relating to the duties on wool and hair. * * *

The said regulation is known as T. D. 44489, 59 Treas. Dec. 73, and was adopted and promulgated on December 8, 1930, and is as follows:

After investigation, the bureau finds that the regulations promulgated as T. D. 22702, authorizing the estimation of the quantity of wool on imported sheepskins on the basis of close shearing, results in the assessment of duty on a considerably less quantity of wool than is obtained by pulling the wool from the skin.

In order that duty may be collected on the full amount of wool imported on the skin, T. D. 22702 is hereby revoked, and you are instructed hereafter to base your estimate on the quantity of wool obtainable by pulling.

Inasmuch as this change in practice will result in the collection of substantially more duties on importations of wool on the skin, you are authorized and directed to continue the practice under T. D. 22702 as to wool on the skins entered for consumption or withdrawn from bond within 30 days after publication of this decision.

The importer protested, insisting that the dutiable weight of said wool should be ascertained upon its sheared content, as fixed by a regulation of the Secretary of the Treasury on January 3, 1901, which is known as T. D. 22702, 4 Treas. Dec. 8, and which is as follows:

The department is in receipt of a report from Special Agent Caleb W. West, concerning the method in vogue at your port of ascertaining the per cent or dutiable quantity of wool on imported raw sheepskins.

It appears that the weigher selects a given number of representative skins, with due regard to the sizes thereof, from the various invoices, and, after taking the gross weight, the same are sent to the pullery for pulling; that the wool when pulled from the skins after being dried, is then weighed, and the quantity thus ascertained is deducted from the gross weight and the resulting quantity divided by the number of skins sent to the pullery, to determine the allowance for tare per skin; that multiplying the number of entered skins by this multiplier and subtracting the result from the gross weight is supposed to give the dutiable

quantity of wool on said skins; and that such practice results in a loss to the revenue,

The collector of customs at New York, to whom the matter was referred, transmits the following report from the United States appraiser, indicating the practice pursued at that port in determining the dutiable quantity of wool on raw sheepskins:

The actual weight of skins representative of the contents of the package under consideration is taken and report made of the weight of wool under the rules of the department (see Heyl, 1891, and T. D. 18907), when these rules can be applied. Many of the skins now imported are not included in the schedule of the department rules. In such cases it not infrequently happens that there are found mixed in the bale fairly representative skins of the same grade both with wool thereon and without. In such instances the difference in weight between the skins with and without wool is made the basis of our report of the weight of the wool. When the skins are very irregular in weight or condition this practice can not apply. In such cases the judgment and expert knowledge of the examiner must be depended upon for a correct report. The close shearing of representative skins is believed to be the best way of getting accurate information as to weight, and we have been authorized by the department, when necessary, to incur the inconsiderable expense required for this action. If differences or doubts arise we employ this method. The test by pulling the wool from the skin, as described by Special Agent West, is not thought by this office to be proper or equitable to the interests involved. It is thought in this office that the skins alluded to in Special Agent West's letter are probably wet salted skins, but whether wet or dry, the shearing of a reasonable number of the skins should furnish data for a correct report of the dutiable weight of the wool.

You will cause the practice at your port to conform to that prevailing at the port of New York as above indicated.

In this connection, your attention is invited to Treasury Decision 21764, dated November 15, 1899.

On the trial in the court below it was stipulated that from the time of the promulgation of said T. D. 22702 until January 8, 1931, the effective date of said T. D. 44489, it was the continuous practice at the ports of the United States, with the exception of the port of Boston, Mass., to compute the dutiable weight of wool by said shearing process, as provided in said T. D. 22702.

The principal contention made by the importer in the court below and here was that the method of computation of weight by shearing constituted a long-continued administrative practice; that the same had received legislative approval by the Tariff Act of 1930; and that the Secretary of the Treasury could not change the method by regulation without an act of Congress authorizing the same. In other words, the practice had become a part of the law, and the Congress had recognized this in reenacting the wool-duty provision of law without substantial changes.

The United States Customs Court sustained the protest by a divided court, and the Government has appealed.

T. D. 22702 was promulgated under the authority given by paragraph 360 of the Tariff Act of July 24, 1897, which is as follows:

360. The duty on wools on the skin shall be one cent less per pound than is imposed in this schedule on other wools of the same class and condition, the quantity and value to be ascertained under such rules as the Secretary of the Treasury may prescribe.

Said paragraph 360 was reenacted in identical language in paragraph 371 of the Tariff Act of August 5, 1909. The Tariff Act of October 3, 1913, contained no such provision, wool and hair being free listed by that act.

Paragraph 1104 of the Tariff Act of 1922 was in identical language with that portion of paragraph 1104 of the Tariff Act of 1930, hereinbefore quoted.

It appears from the record that from the time of the promulgation of said T. D. 22702 until January 8, 1930, the dutiable weight of wool on the skin was ascertained by the shearing method, as provided by said T. D. 22702, except the importations at the port of Boston, which, for a time, were computed upon the pulled basis. It also appears that the clean content of wool estimated by pulling, in conformity with said Treasury regulation, T. D. 44489, constituted 30 per centum of the net weight of the skins involved here, while if it were estimated by the shearing method of said Treasury regulation, T. D. 22702, it would amount to 24 per centum.

The appellee insists that said regulation T. D. 44489 is unreasonable and, therefore, invalid, but cites no authority and makes no argument in support of this contention, except to suggest, generally, that the regulation is inconsistent with the Tariff Act of 1930. Counsel seem to be laboring under the impression that it was incumbent upon the Government to prove the reasonableness of the regulation. The burden of establishing its unreasonableness devolved upon the appellee, and, not having assumed that burden, the appellee can not now be heard to insist that the regulation is invalid for that reason. The only real contention made by appellee is that the said regulation is invalid because promulgated without authority.

We are quite unable to understand how the doctrine of legislative approval or ratification of long-continued administrative practice can have any bearing on the case at bar. That doctrine is a rule of construction adopted by the courts in order to attempt to carry out the legislative intent. In brief, the doctrine is that where a statutory enactment is ambiguous in meaning and has received an administrative construction which has been for a long period continuously followed in the administration of such law, then, when this law has been, substantially, reenacted by the legislative body, it will be presumed that it was reenacted with the construction attached thereto which had so long been followed. This is the doctrine of all the courts. *Merritt* v. *Cameron,* 137 U. S. 542; *Robertson* v. *Downing,* 127 U. S. 607; *United States* v. *Falk,* 204 U. S. 143; *United States* v. *Hermanos,* 209 U. S. 337; *United States* v. *Anderson,* 269 U. S. 422; *Lang* v. *United States,* 10 Ct. Cust. Appls. 228, T. D. 38563; *Bayersdorfer* v. *United States,* 7 Ct. Cust. Appls. 66, T. D. 36390; *Bache* v. *United States,* 11 Ct. Cust. Appls. 314, T. D. 39129; *United States* v.

*Kawahara*, 15 Ct. Cust. Appls. 231, T. D. 42242; *Bloomingdale Bros.* v. *United States*, 3 Ct. Cust. Appls. 204, T. D. 32530.

As early as *Edwards's Lessee* v. *Darby*, 12 Wheat. 206, 209, the Supreme Court said—

In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.

However, this has no application here. No case has been called to our attention where the doctrine has been applied to a regulation such as that here involved. The Secretary of the Treasury promulgated said T. D. 22702, presumably under authority of law. By it he prescribed one method of ascertaining the wool content of skins with the wool on, namely, the shearing method. The Tariff Act of 1930 repealed all provisions of the wool schedules of former acts, established new provisions and authorized and directed the Secretary of the Treasury to promulgate regulations to carry these provisions into effect. Under this authority the Secretary established a new method of ascertaining such clean wool content, namely, the pulling method.

There is no reason apparent why he may not do so. The scope of such regulations is within the discretion of the Secretary of the Treasury, and, when such discretion is reasonably exercised, will not be disturbed by the courts. *United States* v. *Bartram Bros.*, 131 Fed. 833; *American Sugar Refining Co.* v. *United States*, 211 U. S. 155; *Lunham* v. *United States*, 1 Ct. Cust. Appls. 220, T. D. 31258; *McBride* v. *United States*, 1 Ct. Cust. Appls. 293, T. D. 31354; *Gump* v. *United States*, 3 Ct. Cust. Appls. 137, T. D. 32384.

The fallacy of the argument presented by counsel for appellee will be at once apparent. It is contended that T. D. 22702 became a part of the law, when adopted, and requires congressional action to repeal it. In the same breath it is argued that it still continues in force, although the statute of which it was a part is, itself, repealed. This would be attributing to the regulation more continuing force and effect than the statute itself.

It is true that a regulation of the Secretary of the Treasury, duly promulgated in pursuance of the authority given to the Secretary in a tariff act by Congress, will continue in operative force and effect, in the absence of any order of the Secretary repealing or modifying the same, or, in the absence of a new regulation in lieu thereof, after a new tariff act containing a like power to make regulations has been enacted and has become effective. This, however, is not because of any continuing vitality of the regulation itself, but is because it is assumed that the Secretary, by the absence of action on his part, has assented to and repromulgated the former regulation for the time

being. The moment he acts, however, under the new tariff act such new action constitutes his regulation and the former one becomes, by that act, abrogated.

Let us assume that the Secretary duly promulgated a regulation concerning the dutiable weight of wool, by virtue of his authority under the Tariff Act of 1922. Assume, further, that the Tariff Act of 1930 contained no provision authorizing the Secretary to make any such regulation. It must be conceded in such case that when the Tariff Act of 1930 became effective, *eo instanti* the said former regulation became of no force and effect. The authority being withheld, and the former act being repealed, no further authority existed, and the regulation was a nullity.

Again, if appellee's contention is to obtain, paragraph 1104, authorizing the Secretary to make regulations, does not mean what it says and is totally ineffective. We are unable to hold that the Congress gave this power with a *proviso* which does not appear upon the face of the law. If the construction argued for should obtain, then in all cases the committees of Congress having tariff legislation in charge must investigate all regulations made by the Secretary of the Treasury and by express language repeal any of those which might otherwise be effective under the new law. Such a construction is neither reasonable nor in harmony with the authorities.

What we have already said will render unnecessary any reference to the other points argued by counsel.

The judgment of the United States Customs Court is *reversed*.