Irene Mitchell PALLIN, Plaintiff-
Appellee,

v.

UNITED STATES of America and
Edward Elmer Mitchell, Jr., De-
fendants-Appellants.

No. 71–1624.

United States Court of Appeals,
Ninth Circuit.

April 1, 1974.

As Modified on Denial of Rehearing
May 30, 1974.

Carl Strass (argued), George R. Hyde, Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., Shiro Kashiwa, Asst. Atty. Gen., San Francisco, Cal., for defendants-appellants.

William C. Wunsch (argued), Faulkner, Sheehan, Wunsch & Hartman, San Francisco, Cal., for plaintiff-appellee.

Before ELY and TRASK, Circuit Judges, and MURPHY, District Judge.*

## OPINION

MURPHY, District Judge.

Defendant-appellant, Edward Mitchell, Jr., and his sister, plaintiff-appellee, Irene Mitchell Pallin, are both enrolled Indians of the Yurok Tribe. Both sought the same tract of land as an Indian allotment. The tract, 160 acres of the public domain located north of Hoopa in Humboldt County, California,[1] was originally patented in 1907 to Nancy Burrill, grandmother of Edward and Irene. Since Nancy Burrill lived on land previously allotted to her on the Hoopa Valley Indian Reservation, she allowed her son, Edward Mitchell, Sr., father of the litigants, to establish a home on the public domain allotment. Edward Mitchell, Sr. occupied and improved the land. After his death his wife, Theresa Mitchell, lived on the land until 1953. Appellee Irene has occupied the allotment since 1953.

The Bureau of Indian Affairs eventually discovered that Nancy Burrill had illegally received both the 160-acre public domain allotment and the prior allotment on the Hoopa Valley Indian Reservation. Accordingly, on May 16, 1957, the public domain allotment patent was cancelled and the land restored to the public domain pursuant to the Act of April 23, 1904, as amended, 25 U.S.C. § 343.

On July 16, 1957, Irene and her brother Edward simultaneously filed Indian allotment applications for the 160-acre tract of land under Section 4 of the General Allotment Act of 1887, as amended, 25 U.S.C. § 334. As a result of a drawing in September 1957 to determine the priority of the two applications, the Bu-

---

* Honorable Thomas F. Murphy, Senior United States District Judge, Southern District of New York, sitting by designation.

1. The land is described as the E½ SW¼ and S½ SE¼ of Section 29 Township 10 North, Range 4 East, Humboldt Meridian, California.

reau of Land Management ("BLM") awarded Irene the entire tract. On appeal, the decision was vacated by the BLM Director because the land had not been classified.

■ Since 1934 land in the public domain may not be disposed of by an Indian allotment until it has been classified as irrigable, nonirrigable agricultural or nonirrigable grazing land. The regulatory scheme was changed in 1934 when the Secretary of the Interior, pursuant to Executive Order 6910, withdrew all public lands in the ten western states from settlement. "Thereafter, classification by the Secretary was a prerequisite to * * * Indian settlement. Section 7 of the Taylor Grazing Act, 43 U.S.C. § 315(f), authorized the Secretary 'in his discretion, to examine and classify any lands withdrawn or reserved' by the executive orders. Bronken v. Morton, 473 F.2d 790, 793 (9th Cir. 1973)." Kale v. United States, 489 F.2d 449 (9th Cir., 1973).

On remand a BLM examiner recommended that 80 acres of the tract be classified as nonirrigable agricultural land and 80 acres be classified as nonirrigable grazing land. The examiner's report described the land as steep, rough terrain with several drainages and two small creeks. Valuable improvements had been made by the litigants' parents. Approximately 12 acres of land had been cleared. The grazing area was almost entirely covered by valuable timber. There were several structures in various states of disrepair. Most of the improvements, including a house, barn and fences, were located on the agricultural portion. The examiner concluded that:

*"While it would not be considered an economic unit by itself,* the tract would constitute a good home, with a few repairs being made, for an individual who might obtain employment in the number of lumber mills located in the Hoopa Valley and has been proven so in view of the long and continued occupancy by Mrs. Theresa Mitchell and her children."* (Emphasis ours.)

The examiner indicated that the equities favored Edward because he was willing to provide a home for his mother and therefore recommended that he be awarded the improved portion of the tract, the nonirrigable agricultural land, and that Irene be awarded the unimproved portion, the nonirrigable grazing land.[2]

---

2. The Examiner's report stated:

"When first considering the possibility of awarding the tracts to one of the subject applicants the Bureau requested that the Bureau of Indian Affairs, since they were possibly more intimately acquainted with the domestic affairs of these two people, make any suggestions or recommendations, in relation to the equities involved. They replied as follows: 'In relation to the equities involved, it has been the opinion of this office that Mrs. Theresa Mitchell or her assignees may be entitled to major equities in any improvements or values, if any, that can be considered apart from the land values involved. If land equities, established through long use are involved, it would appear that members of the (Mitchell) family willing to provide a home for the mother might perhaps warrant strong consideration for that portion of the tract where the improvements were made by Mrs. Mitchell and her husband. Mrs. Pallin, being one of the younger members of the family, has contributed little labor and little or no money to the establishment of the improvements or to the development of the land. Perhaps Mrs. Pallin could be alloted the unimproved portion of the former allotment, with the improved eighty acres being awarded to Edward Elmer Mitchell, Jr., who is apparently willing to grant the mother the right to use the home for the balance of her life time.'

"The above would indicate a strong desire on the part of the local Bureau of Indian Affairs personnel to make amends for the mistake made by the federal government in non-cancellation of the Nancy Burrill allotment, No. 108 some fifty-three years ago with the consequent quasi-occupancy of the land since 1907. There is the implied feeling that Mrs. Mitchell or her descendants have some possessary rights in the improvements and the land that should be recognized. If this be the case, then the attached attestation by Mrs. Mitchell that she preferred her son, Mr. Edward Elmer Mitchell, Jr. receive any rights that she might have in the original allotment

The recommendations of the examiner were accepted by the BLM and on July 5, 1960, a patent for the 80 acres of non-irrigable grazing land was issued to Irene and a patent for the 80 acres of non-irrigable agricultural land was issued to Edward. Irene then petitioned the BLM Director to cancel the patents and to divide the land differently. The petition was dismissed. The Secretary of Interior affirmed the decision of the Director of the BLM.[3]

Pursuant to 25 U.S.C. § 345[4] and 28 U.S.C. § 1353,[5] Irene brought the present suit against the United States and her brother[6] in the District Court for the Northern District of California claiming that she had been wrongfully denied her right to an allotment by the Government and that the allotment issued to her brother was contrary to law. Notwithstanding the prior classification of the land by the Secretary of the Interior, the District Court found the entire

should also be recognized and the portion of the lands with the house and other improvements should be awarded to the son, with the remainder of the land being awarded to the daughter.

"The subject tract is located in an area where such a tract of public domain would be isolated from other public (vacant) domain of any great size, would be extremely difficult to administer, would be highly susceptible to logging trespass and would eventually be disposed of in the normal course of proper management and in placing the land to its highest and best use.

"In view of the above, it is recommended by the undersigned that: The S½ SE¼ Section 29, T. 10 N. 2, R. 4W, H.M. be classified as non-irrigable grazing land, that the E½ SW¼ Section 29, T. 10 N. R. 4W, H.M. be classified non-irrigable agricultural and that both be disposed of under the regulations of 43 CFR 176.

"I further recommend, in view of the existing equities involved, the past use and occupancy of the land, and the desires of the heir to the quasi-legal trustee and original occupant of the land that the subject lands be awarded to the subject applicants as follows:

S ½ SE ¼ to Mrs. Irene Mitchell Pallin under Indian Allotment 054321

E ½ SW ¼ to Mr. Edward Elmer Mitchell under Indian Allotment 054320."

3. Irene Mitchell Pallin, Decision of the Secretary of the Interior, A–28766 (September 21, 1962).

4. "§ 345. Actions for allotments

"All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or

defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands held August 15, 1894, by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: *Provided*, That the right of appeal shall be allowed to either party as in other cases."

5. "§ 1353. Indian allotments

"The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.

"The judgment in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him; but this provision shall not apply to any lands held on or before December 21, 1911, by either of the Five Civilized Tribes, the Osage Nation of Indians, nor to any of the lands within the Quapaw Indian Agency."

6. See United States v. Fairbanks, 171 F. 337, 338 (8th Cir. 1909), aff'd, 223 U.S. 215, 32 S.Ct. 292, 56 L.Ed. 409 (1912) for a discussion of parties defendant other than the United States.

tract to be nonirrigable grazing land, also that Edward was statutorily ineligible for an allotment. Accordingly, it ordered the cancellation of his patent and the issuance of a patent for that land to Irene in addition to the lands already allotted to her.

The District Court's principal findings of fact and conclusions of law are quoted in the margin.[7] It will be observed that it refrained from stating what standard of review it applied in reversing the Secretary's classification of the 80 acres allotted to Edward, and likewise refrained from stating its reason for cancelling Edward's allotment and ordering the issuance of a trust patent for those lands to the plaintiff Pallin. We surmise that Edward's allotment was cancelled because the Court found he was an Indian living on an Indian Reservation at the time he applied for the allotment. Such Indians are specifically excluded by 25 U.S.C. § 334 from allotments of non-reservation land.

We therefore are called upon to decide what is the proper standard of review by a District Court of the Secretary of Interior's decision in granting these allotments in an action brought pursuant to 25 U.S.C. § 345 and 28 U.S.C. § 1353. Such a determination in turn fixes the scope of appellate review of factual determinations by a trial court. *Cf.*, F.R. C.P. 52. In addition, we must decide whether it was error to review and reverse the Secretary's classification of the tract.

It is common ground that the District Court held a trial *de novo* on the classification by the Secretary of the 160 acres allotted to Irene and Edward. It heard and accepted the testimony of an associate timberland and timber properties appraiser employed by the Humboldt County Assessor's Office, who opined that no portion of the 160-acre tract constituted agricultural land but admitted on cross-examination that he applied the standards of the Humboldt County Assessor's Office and did not know what standards the Secretary of Interior applied in the classification of lands under the Taylor Grazing Act (Tr. 15). *Cf.*, Regulations 43, C.F.R. § 176.-9(b) (1960).[8] It also obviously rejected the testimony of Edward Mitchell and his mother and another relative to the effect that a considerable part of the tract was used for agricultural purposes for many years.

7.　　"FINDINGS OF FACT

＊　　＊　　＊　　＊　　＊

"4. On July 17, 1957, defendant Edward Elmer Mitchell, Jr. was not settled upon, using or occupying said land and has not at any time since said date settled upon, occupied or used said land.

"5. On July 17, 1957, defendant Edward Elmer Mitchell, Jr. was residing on the Hoopa Valley Indian Reservation in the State of California.

"6. On July 17, 1957 and at all time thereafter said land has constituted non-irrigable grazing land.

＊　　＊　　＊　　＊　　＊

"CONCLUSIONS OF LAW

"1. Defendant Edward Elmer Mitchell, Jr. was not statutorily eligible for allotment of the 160-acre tract of land in the County of Humboldt, State of California, described as the E½ SW¼ and the S½ SE¼ of Section 29, Township 10 North, Range 4 East, Humboldt Meridian, on July 17, 1957 when he made application for allotment of said land to him, nor at any time thereafter, nor is he now eligible. The issuance of a trust patent for said land to defendant Edward Elmer Mitchell, Jr. on July 5, 1960 was contrary to law.

"2. On July 17, 1957 and at all times thereafter plaintiff Irene Mitchell Pallin was and is statutorily eligible for allotment to her of the 160-tract of land in the County of Humboldt, State of California, described as the E½ SW¼ and the S½ SE¼ of Section 29, Township 10 North, Range 4 East, Humboldt Meridian.

"3. Plaintiff Irene Mitchell Pallin is entitled to a judgment cancelling the trust patent issued to defendant Edward Elmer Mitchell, Jr. on July 5, 1960 for the 80-acre tract of land in the County of Humboldt, State of California, described as the E½ SW¼ of Section 29, Township 10 North, Range 4 East, Humboldt Meridian and directing the issuance to her of a trust patent for said land."

8. The language of this section has remained unchanged since 1954. See 43 C.F.R. § 2530.0–8(a)(2) (1972).

Although the scope of review by a District Court of Indian allotments made by the Secretary of Interior is not crystal clear, we are satisfied that in an action brought by an Indian under 25 U.S.C. § 345 and 28 U.S.C. § 1353, Congress has given to the District Court original jurisdiction to determine whether, in actions involving the right to an allotment under the General Allotment Act, 25 U.S.C. § 334 the Secretary acted within the limits Congress has placed on him. Hopkins v. United States, 414 F. 2d 464 (9th Cir. 1969); Finch v. United States, 387 F.2d 13 (10th Cir. 1967), cert. denied, 390 U.S. 1012, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968).

In *Hopkins* we held:

"25 U.S.C. § 345 and 28 U.S.C. § 1353 give district courts original jurisdiction of actions involving the right to an allotment under the General Allotment Act. Plaintiffs' contention that the Secretary exceeded powers conferred upon him by the governing statutes is subject to judicial review in such a suit." (Citations and footnote omitted.) 414 F.2d at 466.

Sections 345 and 1353 give the District Court original jurisdiction of actions involving *the right to an allotment* under the General Allotment Act, 25 U. S.C. § 334. Both plaintiff Irene and her brother Edward were, in fact, given an allotment. What was at issue in the court below was Irene's claim (1) that Edward was not entitled to an allotment because (a) he was living on an Indian Reservation at the time he applied and (b) that he had not made settlement on such land, and (2) that she alone was entitled to the entire tract of 160 acres because (a) she had made settlement and was living on it since 1953 and (b) the entire tract of 160 acres was nonirrigable grazing land and (c) that under the General Allotment Act she was entitled to an allotment of 160 acres of nonirrigable grazing land. [9]

The *rights* to an allotment thus put in issue were (1) Edward's right to an allotment, and (2) Irene's right to the entire 160 acres.

We hold that the District Court quite properly received evidence negating Edward's *right* to an allotment. Such evidence tended to prove that at the filing time he was living with his wife on an Indian Reservation and was therefore statutorily ineligible for an allotment of land in the public domain. 25 U.S.C. § 334. The District Court accordingly had the power to order his allotment cancelled. 25 U.S.C. § 345.

Every case but one that we have found has consistently held that the trial court could review the facts before the Secretary in determining whether the plaintiff Indian had a right to an allotment. United States v. Pierce, 235 F.2d 885 (6th Cir. 1956) (Agua Caliente Band of Mission Indians had the right to have their allotments equalized and the lower court could proceed to do just that unless it was assured that the Indian Service would proceed with diligence); Sloan v. United States, 118 F. 283 (C.C.D.Neb.1902), appeal dismissed, 193 U.S. 614, 24 S.Ct. 570, 48 L.Ed. 814 (1904) (reviewed evidence on the issue whether plaintiffs were members of the Omaha Tribe so as to be entitled to allotment in the tribal reservation); Waldron v. United States, 143 F. 413

9. "§ 336. Allotments to Indians making settlement

"Where any Indian entitled to allotment under existing laws shall make settlement upon any surveyed or unsurveyed lands of the United States not otherwise appropriated, *he or she shall be entitled*, upon application to the local land office for the district in which the lands are located, to have the same allotted to him or her and to his or her children in manner as provided by law for allotments to Indians residing upon reservations, and such allotments to Indians on the public domain as herein provided shall be made in such areas as the President may deem proper, not to exceed, however, forty acres of irrigable land or eighty acres of nonirrigable agricultural land or one hundred sixty acres of nonirrigable grazing land to any one Indian; * * *." (Emphasis ours.)

(C.C.D.S.D.1905) (the court found on evidence that plaintiff was in fact an Indian and entitled to an allotment); Guyett v. McWhirk, 154 F. 784 (C.C.D. Or.1907) (two Indians applied for allotment of the same parcel of land, and reviewing the evidence the court affirmed the decision of the Interior Department that defendant had the superior right); Sully v. United States, 195 F. 113 (C.C. D.S.D.1912) (contrary to the Department of Interior, the court held on evidence that plaintiff was of Indian blood and entitled to an allotment). In Daniels v. United States, 247 F.Supp. 193 (W.D.Okl.1965), the plaintiff, in an action undoubtedly brought under 25 U.S. C. § 345 although jurisdiction was not discussed, sought a grant of an Indian allotment to a specific tract of land which the Secretary of Interior had refused to classify and open for entry as requested by plaintiff in an Indian allotment application. The district court held previously that the decision of the Secretary was subject to judicial review under the provisions of the Administrative Procedure Act and determined that a trial *de novo* was improper, since all proper factors appeared to have been considered and weighed in the Secretary's decision. This case has not been followed by any other case on the issue of the application of the Administrative Procedure Act in an Indian allotment case.

■■ Whether Irene was entitled to the entire 160-acre tract presented an entirely different issue to the District Court. As we indicated above, the regulatory scheme of Indian allotments was changed in 1934 when the Secretary of Interior withdrew all public lands in the ten western states from settlement. Thereafter, classification by the Secretary was a prerequisite to Indian settlement, so that at the time of Irene's application for the allotment of the 160-acre tract settlement was not a condition precedent,[10] and before any allotment

could be made the Secretary was authorized by § 7 of the Taylor Grazing Act, 43 U.S.C. § 315f, "in his discretion, to examine and classify any lands withdrawn or reserved" by the Executive Orders. (See p. 29 *supra*.) Thus, the principal question presented, with reference to Irene, was whether or no the District Court properly held a trial *de novo* concerning the Secretary's classification of the tract.

We hold that it was error for the District Court to conduct such a trial and that it lacked jurisdiction to review the Secretary's classification.

■ 25 U.S.C. § 345 and 28 U.S.C. § 1353 give to the District Court original jurisdiction in actions involving the *right to an allotment* to review the decision of the Secretary of Interior. The classification of lands in the public domain by the Secretary of Interior is not a duty or obligation imposed on him by the General Allotment Act of 1887, as amended (25 U.S.C. § 334), but rather by § 7 of the Taylor Grazing Act (Act of June 28, 1934), 43 U.S.C. § 315f, which reads in part:

"The Secretary of the Interior is hereby authorized, *in his discretion*, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), * * * which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, * * *. *Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry:* * * *." (Emphasis supplied.)

It is obvious that the two Acts, the General Allotment Act and the Taylor Grazing Act, serve two different purposes,

10. In fact settlement before classification would be a trespass. Kale v. United States, *supra*.

■

and what we said above concerning the jurisdiction of the District Court under § 345 and § 1353 relates exclusively to an Indian's *right* to an allotment. The Taylor Grazing Act, particularly § 7, imposes the duty on the Secretary of Interior to classify the lands withdrawn pursuant to the Executive Orders, and such classification, Congress said, was to be in his discretion.

■ Such discretion is specifically excluded from review by the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), for there it is provided:

"(a) This chapter applies, according to the provisions thereof, except to the extent that—

\* \* \* \* \* \*

"(2) agency action is committed to agency discretion by law."

Although we have been unable to find any case, nor has any been referred to us, which deals specifically with classification by the Secretary of the Interior for Indian allotment purposes, except *Daniels, supra*, similar attacks on the Secretary's classification by non-Indians have been held nonreviewable. Sellas v. Kirk, 200 F.2d 217 (9th Cir.), cert. denied, 345 U.S. 940, 73 S.Ct. 831, 97 L. Ed. 1366 (1953). *Cf.*, Lutzenhiser v. Udall, 432 F.2d 328 (9th Cir. 1970).

In Bronken v. Morton, 473 F.2d 790 (9th Cir.), cert. denied, 414 U.S. 828, 94 S.Ct. 51, 38 L.Ed.2d 62 (1973), an action was brought by holders of Valentine scrip to review the Secretary of Interior's refusal to issue patents to public lands. There we said:

"While it is true, as the district court observed, that the Secretary's discretion in classifying public lands is quite broad, it is equally true that this discretion is not absolute. His decisions are beyond judicial scrutiny only when he possesses discretion, and he acts within the limits Congress has

placed on this discretion." 473 F.2d at 794.

In *Bronken* the Secretary's discretion in making a classification decision was limited by a 1964 statute which mandated that classification was to be made "under existing law." The Secretary's land-use regulations, adopted in 1966, could not be applied to pre-1966 applications.

The classification made by the Secretary in *Pallin* was not limited in any wise by any Congressional mandate or statute.

In any event, the District Court could not hold a trial *de novo* on the classification issue under the Administrative Procedure Act. The Supreme Court, in Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), said:

". . . *de novo* review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." 411 U. S. at 142, 93 S.Ct. at 1244.

*Pallin* is not a case in which factfinding procedures were inadequate, nor is it a proceeding to enforce administrative action. *Cf.*, Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

■ The Secretary, however, was in error in granting an allotment to each of the litigants because he applied the wrong standard. In short, the standard is whether the acreage, whatever it is (agricultural or grazing), will provide a home and furnish a livelihood to an Indian and his family by farming, grazing livestock, or both. In *Hopkins, supra*, we defined the purpose of the General Allotment Act as follows:

" \* \* \* And the legislative history of the Act supports the conclusion that one of the standards to be applied by the Secretary in making

the determinations required by section 1 is whether the reservation lands selected for allotment are capable of yielding support for an Indian settler and his family. If the lands are too poor to accomplish this purpose, the Secretary is not to approve the allotment.

·"Section 4 of the General Allotment Act, applicable to Indians *not* residing on a reservation, is to be read with the same limitations. This section expressly provides that allotments to non-reservation Indians are to be made in the same 'quantities and manner' as allotments to reservation Indians under section 1. Moreover, the legislative purpose to authorize allotments only upon lands which the Secretary determined could provide a home and furnish a livelihood by farming, raising livestock, or both, applies to the General Allotment Act as a whole.

"Section 4 of the General Allotment Act has long been so construed by the Secretary of Interior, and is so construed today. Judicial authority is to the same effect." (Footnotes omitted.) 414 F.2d at 468.

█ What the Secretary did in this case was to adopt the reasoning of his subordinate, namely, that equity favored the giving of 80 acres to Edward, who had promised to permit his mother to live on the land, and 80 acres to Irene because of her settlement, despite the fact that there was a specific finding that the land itself could not support an Indian and his family.

The judgment of the District Court is affirmed insofar as it ordered the cancellation of Edward Elmer Mitchell, Jr.'s allotment, and reversed in all other respects, and the matter remanded to the Secretary for action consistent with this opinion. Each party to bear its own costs.

Judgment affirmed in part and reversed in part.